# **Exhibit B**

Policy

| | |
|---|---|
| *THE INSURED* | **IOANNIS TRIANTAFILLOU** |
| *POLICY OWNER* | **IOANNIS TRIANTAFILLOU** |
| *FACE AMOUNT* | **$500,000** |
| *POLICY NUMBER* | ███████**6 693** |

## LIFE INSURANCE POLICY

## AXA EQUITABLE LIFE INSURANCE COMPANY

### Agrees

- **To pay** the insurance benefits of this policy to the Beneficiary upon receiving proof of the Insured's death; and

- **To provide** *you (the policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Ten Days to Examine Policy** - If for any reason you are not satisfied with your policy, you may cancel it by returning the policy to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

*[signature]*

**Chairman and Chief
Executive Officer**

*[signature]*

**Vice President
and Secretary**

Whole Life—Level Face Amount Plan. Insurance payable upon death. Premiums payable for life. Policy participates in dividends.

No. 126-51

# Contents

The Insurance Benefits We Pay   **2**

Who Benefits From This Policy   **4**

The Premiums You Pay   **4**
    Grace Period
    Lapse
    Reinstatement

How Dividends Are Paid   **5**

The Cash Surrender Value of This Policy   **5**

How a Loan Can Be Made   **6**
    Automatic Premium Loan Option

Options On Lapse   **6**

Other Important Provisions   **7**

How Benefits Are Paid   **8**

Any additional benefit riders and a copy of the application are included at the back of this policy.

## In this policy:

"We," "our" and "us" mean AXA Equitable Life Insurance Company.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

# The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the Beneficiary when we receive proof of the Insured's death.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

- the Face Amount of this policy;

- *plus* any other benefits then due from riders to this policy;

- *plus* any amount due from dividends left under this policy;

- *plus* any unearned policy loan interest;

- *plus* or *minus* any adjustment for the last premium;

- *minus* any loan (and any loan interest due and unpaid) on this policy.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 8; or (b) the rate required by any applicable law.

We will pay these benefits only if premiums have been paid as called for by this policy. However, even if premiums have been discontinued we may still pay certain benefits. See Options on Lapse, Page 6.

Payment of these benefits may also be affected by other provisions of this policy. See Page 7 where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Special exclusions or limitations (if any) are listed on Page 3.

```
THE INSURED   IOANNIS TRIANTAFILLOU        REGISTER DATE   NOV 17, 1988

POLICY OWNER  IOANNIS TRIANTAFILLOU        DATE OF ISSUE   NOV 17, 1988

FACE AMOUNT   $500,000                     ISSUE AGE,SEX   33, MALE

POLICY NUMBER  ████████6 693              BENEFICIARY     SEE PAGE 4
```

------------   BENEFITS AND PREMIUMS   ------------

```
     BENEFITS                        ANNUAL PREMIUM      PREMIUM PERIOD

LIFE INSURANCE                         $5,780.00        FOR LIFE
```

THE FIRST PREMIUM IS $5,780.00 AND IS DUE ON OR BEFORE DELIVERY OF THE
POLICY.  SUBSEQUENT PREMIUMS ARE DUE ON NOV 17, 1989 AND EVERY 12 MONTHS
THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM
TABLE.

--------------- TABLE OF VALUES ----------------
(SEE PAGES 5 AND 6 FOR DETAILS)

| END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | DAYS | END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | DAYS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 0 | $ 0 | 0 | 90 | 13 | $ 77,500 | $216,500 | 18 | 72 |
| 2 | 0 | 0 | 0 | 90 | 14 | 85,000 | 230,500 | 18 | 149 |
| 3 | 11,500 | 47,500 | 7 | 166 | 15 | 92,500 | 243,000 | 18 | 188 |
| 4 | 17,500 | 69,000 | 10 | 25 | 16 | 100,000 | 255,000 | 18 | 196 |
| 5 | 23,500 | 89,000 | 12 | 16 | 17 | 108,000 | 267,500 | 18 | 203 |
| 6 | 29,500 | 107,000 | 13 | 196 | 18 | 116,000 | 278,500 | 18 | 184 |
| 7 | 36,000 | 125,000 | 14 | 293 | 19 | 124,000 | 289,500 | 18 | 145 |
| 8 | 43,000 | 143,500 | 15 | 314 | 20 | 132,500 | 300,500 | 18 | 109 |
| 9 | 49,500 | 158,500 | 16 | 185 | AGE 60 | 193,000 | 362,000 | 16 | 194 |
| 10 | 56,500 | 173,500 | 17 | 27 | AGE 62 | 211,500 | 377,000 | 15 | 318 |
| 11 | 63,500 | 189,000 | 17 | 214 | AGE 65 | 239,000 | 396,500 | 14 | 287 |
| 12 | 70,500 | 203,000 | 17 | 350 | AGE 70 | 284,500 | 423,500 | 12 | 327 |

THESE VALUES FOR THE POLICY ASSUME THAT ALL PREMIUMS ARE PAID.  THEY DO NOT
REFLECT DIVIDEND CREDITS OR LOANS.

```
WL50(PREFERRED)                                        (1)    ASO-RSO
126-51-3                        PAGE 3           23-07-31  23-07-31 1025
                        (CONTINUED ON NEXT PAGE)
```

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER ███████6 693.

-------- ENDORSEMENTS --------

AMENDMENT TO 'SUICIDE EXCLUSION':  THE 'SUICIDE EXCLUSION' IS  AMENDED BY
DELETING THE PHRASE 'WHILE SANE OR INSANE.'

S.20-16

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER        ███6 693

ADMINISTRATIVE OFFICE:

AXA EQUITABLE LIFE INSURANCE COMPANY
LIFE OPERATIONS
8501 IBM DRIVE, SUITE 150
CHARLOTTE, NC 28262
(800) 777-6510

**WL50(PREFERRED)**
**126-51-3**

# Who Benefits From This Policy?

**OWNER.** The Owner of this policy is the Insured unless stated otherwise in the application, or later changed.

As the Owner, you are entitled to exercise all the rights of this policy while the Insured is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**BENEFICIARY.** The Beneficiary is as stated in the application, unless later changed. The Beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the Insured will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated Beneficiary living at the death of the Insured, we will pay the benefits to the surviving children of the Insured in equal shares. If none survive, we will pay the Insured's estate.

**CHANGING THE OWNER OR BENEFICIARY.** While the Insured is living, you may change the Owner or Beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the Beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new Beneficiary in accordance with "How Benefits Are Paid" on Page 8.

**ASSIGNMENT.** You may assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment. An absolute assignment will be considered as a change of ownership to the assignee.

# The Premiums You Pay

**AMOUNTS AND DUE DATES.** Page 3 shows the amounts and due dates of premiums and the period for which they are to be paid. Each premium is payable on or before its due date.

You may write and ask us to change the frequency of premium payment. If we approve the change, the new premium will be determined on the rate scale for this policy.

**GRACE PERIOD.** We allow a grace period of 31 days for payment of each premium, after the first premium. The insurance benefits will continue during the grace period.

**LAPSE.** If a premium is not paid by the end of its grace period, the policy will lapse as of the premium due date. If this occurs, all insurance ends, except as stated in Options on Lapse on Page 6. Additional benefits riders do not continue beyond the grace period of an unpaid premium.

**REINSTATEMENT.** You may reinstate this policy within five years after lapse, if: (1) the policy has not been given up for its net cash surrender value; (2) you provide evidence of insurability satisfactory to us; (3) you pay all overdue premiums with interest at 6% per year compounded annually; and (4) you repay or reinstate any policy loan and loan interest due and unpaid. The effective date of the reinstated policy will be the monthly policy anniversary on or next following the date we approve your reinstatement application.

**PREMIUM ADJUSTMENT.** We will add to the insurance benefits any part of the last premium paid that applies to a period beyond the policy month in which the Insured dies. If the Insured dies during the grace period of an unpaid premium, we will deduct that premium from the insurance benefits. These are the adjustments for the last premium referred to on Page 2.

# How Dividends Are Paid

We will determine your policy's share, if any, of our divisible surplus annually. It will be payable as a dividend at the end of each policy year if the policy is then in effect with all premiums duly paid. We do not expect any dividend to be paid on your policy before the end of the second policy year. Dividends will take account of loans made on your policy.

**DIVIDEND OPTIONS.** You may choose one of these options:

- **CASH:** Your dividends will be paid directly to you.

- **PREMIUMS:** Your dividends will be used to help pay any premium then due.

- **DIVIDEND ADDITIONS:** Your dividends will be used to provide paid-up additional whole life insurance on the Insured.

- **DIVIDEND ACCUMULATIONS:** Your dividends will be left with us to accumulate with interest at the effective annual rates we determine. Such rates will not be less than 3%.

Your dividends will be used to provide dividend additions if you have not advised us otherwise within three months after we mail the dividend notice. While this policy is continued as reduced paid-up insurance, any dividends will be used to provide dividend additions. No dividends are paid under any extended term insurance. Dividend additions and dividend accumulations existing when the Insured dies, plus any dividend then payable, will be included in the insurance benefits.

**"Dividend Credits,"** as used in this policy, means the sum of dividend accumulations, the cash value of dividend additions, and any dividend that has not been applied under an option. The cash value of dividend additions is their reserve, or the original cash dividends if greater.

You may use dividend credits toward making the policy paid-up for its Face Amount. We will do this at your written request on any premium due date when dividend credits plus the reserve on this policy equal the reserve for the paid-up policy. No further premiums are due on a paid-up policy.

You may withdraw dividend credits at any time, if they are not required as security for a loan. If this policy lapses, any dividend credits that are not withdrawn will be applied as part of the net cash surrender value in the Options on Lapse section.

# The Cash Surrender Value of This Policy

**CASH SURRENDER VALUE.** The Table of Values on Page 3 shows the cash surrender value of your policy at the end of policy years for which premiums have been paid. Any cash values not shown will be furnished on request. We will determine the cash surrender value as of a date within a policy year with allowance for time elapsed and premiums paid.

The cash surrender value within three months from the date of lapse will be the same as it was on that date. The cash surrender value after three months from the date of lapse, while the policy is continued as reduced paid-up or extended term insurance, is the reserve for the policy based on the Insured's then current age. The cash surrender value of paid-up insurance within 30 days after a policy anniversary will not be less than it was on that anniversary.

**NET CASH SURRENDER VALUE.** You may give up this policy for its net cash surrender value at any time while the Insured is living and after the first date to which premiums have been paid. You may do this by sending us a written request and this policy. The net cash surrender value is equal to the cash surrender value plus any dividend credits, minus any loan and any loan interest due and unpaid to the date of surrender. If loan interest for a policy year has been paid past the date of surrender, we will reduce the loan balance by the amount of unearned policy loan interest before calculating the net cash surrender value. We will compute the net cash surrender value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

# How a Loan Can Be Made

You may get a loan on this policy while it has a loan value, but not if it is being continued as extended term insurance. This policy will be the sole security for the loan. Policy loans will affect the dividends payable under your policy.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest on it will be deducted from the new loan. We may also deduct any unpaid premium then due.

**LOAN VALUE.** The loan value is this policy's cash surrender value on the date of the loan plus any existing dividend credits on such date.

**LOAN INTEREST.** Interest on a loan is payable in advance at a rate of 7.4% a year, corresponding to an effective annual loan rate of 8%. We may charge a lower rate for any period of time if permitted by the jurisdiction in which this policy is delivered. Loan interest is due on the date the loan is made and on each policy anniversary thereafter while the loan remains unpaid. If the interest is not paid when due, it will be added to the loan and bear interest at the effective annual loan rate.

This policy will terminate when a loan and any loan interest due and unpaid first equals or exceeds the cash surrender value plus any existing dividend credits. We will mail 31 days' prior notice to you and any assignee of record at last known addresses.

**REPAYMENT.** You may repay all or part of a loan at any time while the Insured is living, and before the end of the grace period of an unpaid premium. We will deduct any existing loan, and any loan interest due and unpaid, from any benefits we pay at the Insured's death.

**AUTOMATIC PREMIUM LOAN OPTION.** While this option is in effect, any unpaid premium will be paid by policy loan as of the end of its grace period. The amount then available as a loan must be large enough to pay the premium. If you are using dividends to help pay premiums, a loan will be made only for the part of the premium in excess of the dividend.

This option will be in effect if asked for in the application or if you ask for it in writing before the end of the grace period of an unpaid premium. You may suspend its operation by written notice. This option is not applicable if premiums are paid monthly.

# Options on Lapse

You have three options if the policy lapses. (1) You may apply for reinstatement. If there is a net cash surrender value, you may (2) withdraw it and give up the policy; or (3) use it to continue insurance under one of the following options:

**REDUCED PAID-UP INSURANCE.** This is insurance for the Insured's lifetime and for the amount of insurance that the net cash surrender value will buy. This option participates in dividends.

**EXTENDED TERM INSURANCE.** This is term insurance for an amount equal to the Face Amount, plus any dividend additions, dividend accumulations and any unearned policy loan interest, minus any loan (and any loan interest due and unpaid), all as of the date of lapse. The insurance will continue from the date of lapse for as long a term period as the net cash surrender value will buy. In no event, however, will this period be less than 90 days if premiums have been paid for at least three months before lapse and there is no loan on this policy. This option does not participate in dividends. *This option is not available if so stated on Page 3.*

Extended term insurance will apply automatically if there is a net cash surrender value and you have made no other choice within three months after the date of lapse. Reduced paid-up insurance will apply instead if the extended term insurance option is not available.

If the Insured dies after the grace period but within three months from the date of lapse, the greater of the benefit under reduced paid-up or extended term insurance will apply. In this case, any restriction on Page 3 as to the availability of extended term insurance will not apply provided the date of death is within the extended term period.

We will determine the reduced insurance amount under the paid-up option or the term period under the term option as of the date of lapse (the due date of the unpaid premium), using net single premiums (see Page 7) for the Insured's then current age. We will use net cash surrender values as of the date of lapse, adjusted for any loan or dividend transaction on or after that date.

# *Other Important Provisions*

**YOUR CONTRACT WITH US.** We will provide the insurance described in this contract in consideration of payment of the required premiums.

This policy, and the attached copy of the application for this policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

**INCONTESTABILITY.** We have the right to contest the validity of this policy based on material misstatements made in the application for this policy. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the Insured for two years from the Date of Issue shown on Page 3. No statement shall be used to contest a claim unless contained in the application.

All statements made in the application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

**WHEN AGE OR SEX ARE MISSTATED.** If the Insured's age or sex has been misstated, any benefits will be those that the premium paid would have purchased at the correct age and sex.

**SUICIDE EXCLUSION.** If the Insured commits suicide (while sane or insane) within two years after the Date of Issue shown on Page 3, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest.

**HOW WE MEASURE POLICY PERIODS AND ANNIVERSARIES.** We measure policy years, policy months, and policy anniversaries from the Register Date shown on Page 3. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date. If the end of a premium period or policy year is indicated by an age, it ends on the policy anniversary nearest the birthday on which the Insured reaches that age.

**HOW AND WHEN WE DEFER PAYMENT.** We may defer payment of the net cash surrender value or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

**HOW TO CHANGE THIS POLICY.** You may change this policy to another plan of insurance, or add additional benefit riders, or make other changes, subject to our rules at the time of change.

**THE BASIS WE USE FOR COMPUTATION.** Cash surrender values, reserves, and net single premiums are based on the Commissioners 1980 Standard Ordinary Male and Female Mortality Tables. For any extended term insurance, reserves and net single premiums are based instead on the Commissioners 1980 Extended Term Insurance Male and Female Tables. Continuous functions are used with interest compounded annually at 5% during the first 10 policy years and 4% thereafter; except that in the application of dividends to provide paid-up additional whole life insurance we use 6% interest compounded annually in all policy years. Reserves referred to in this policy are computed by the Commissioners Reserve Valuation Method.

The cash surrender values and paid-up insurance benefits are equal to or more than those required by law. A detailed statement of the method of computing values and benefits has been filed, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

**YOUR VOTING RIGHTS.** If you are an Equitable policy Owner of at least one year's standing, you have the right to vote in the annual election of our Board of Directors. You can vote in person, by mail, or by proxy. For more information, write to our Vice President and Secretary.

# *How Benefits Are Paid*

You can have insurance benefits and the net cash surrender value paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the Insured dies, the Beneficiary will have this right when the Insured dies. If you do make an arrangement, however, the Beneficiary cannot change it after the Insured dies.

The options are:

1. **DEPOSIT:** The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months, or every 12 months, as chosen.

2. **INSTALLMENT PAYMENTS:** There are two ways that we pay installments:

    A. FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments.

    B. FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. **MONTHLY LIFE INCOME:** We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments. You may choose any one of three ways to receive the monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum

(called "Refund Certain"). If at the payee's age the benefit would be the same for more than one period certain, we will deem that the longest period has been chosen.

4. **OTHER:** We will apply the sum under any other option requested that we make available at the time of the Insured's death or net cash surrender value withdrawal.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at 3½% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate. Option 3 does not participate in dividends. The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of Beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

# *Table of Guaranteed Payments*
### *(MINIMUM AMOUNT FOR EACH $1,000 APPLIED)*

## Option 2A
### FIXED PERIOD INSTALLMENTS

| Number of Years' Installments | Monthly Install-ment | Annual Install-ment |
|---|---|---|
| 1 | $84.70 | $1000.00 |
| 2 | 43.08 | 508.60 |
| 3 | 29.21 | 344.86 |
| 4 | 22.28 | 263.04 |
| 5 | 18.12 | 213.99 |
| 6 | 15.36 | 181.32 |
| 7 | 13.38 | 158.01 |
| 8 | 11.91 | 140.56 |
| 9 | 10.76 | 127.00 |
| 10 | 9.84 | 116.18 |
| 11 | 9.09 | 107.34 |
| 12 | 8.47 | 99.98 |
| 13 | 7.94 | 93.78 |
| 14 | 7.49 | 88.47 |
| 15 | 7.11 | 83.89 |
| 16 | 6.77 | 79.89 |
| 17 | 6.47 | 76.37 |
| 18 | 6.20 | 73.25 |
| 19 | 5.97 | 70.47 |
| 20 | 5.76 | 67.98 |
| 21 | 5.57 | 65.74 |
| 22 | 5.40 | 63.70 |
| 23 | 5.24 | 61.85 |
| 24 | 5.10 | 60.17 |
| 25 | 4.97 | 58.62 |
| 26 | 4.84 | 57.20 |
| 27 | 4.73 | 55.90 |
| 28 | 4.63 | 54.69 |
| 29 | 4.54 | 53.57 |
| 30 | 4.45 | 52.53 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

## Option 3
### MONTHLY LIFE INCOME

| AGE | 10 Years Certain | | 20 Years Certain | | Refund Certain | |
|---|---|---|---|---|---|---|
| | Male | Female | Male | Female | Male | Female |
| 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 5.67 |
| 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

# Additional
## Dividend Option Rider

*In this rider, "we" means AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

---

This rider provides a dividend option in addition to those listed in the "Dividend Options" section of the policy to which it is attached. It is subject to the "How Dividends Are Paid" provision of the policy.

You may ask for this "Additional Dividend Option" in writing. If you do, it will go into effect on the later of the fourth policy anniversary or the policy anniversary next following the date we receive your written request for it. However, this option will not go into effect if on the date it otherwise would go into effect the policy is then rated-up in premiums or requires extra premiums.

While this option is in effect, no other dividend option in the policy will apply and the premiums under the policy will be due annually. On each policy anniversary:

1. The current dividend will be used to help pay the annual premium then due; then

2. To the extent necessary, dividend credits will be used to help pay the balance of that premium; and then

3. Any excess of the amount of that premium over the sum of the amounts obtained in items 1 and 2 above will be paid by policy loan to the extent that the policy's loan value is then sufficient.

Any balance of a premium not paid in accordance with the preceding paragraph will then be due in cash. We will inform you in writing of any such balance due. For the purpose of item 2 above, dividend credits arising from dividends will be used before any dividend credits that comprise the guaranteed cash value of any paid-up additions under any Option To Purchase Paid-Up Additional Insurance Rider in the policy.

If part of a premium has been or is to be paid pursuant to item 3 above, then on each policy anniversary we will make a loan on the policy (called the "insured policy loan") equal to (1) such part, if any, of the premium due on that anniversary that is so paid, plus (2) any unpaid insured policy loan in effect immediately before such anniversary, plus (3) the cost of the one year term insurance to be purchased as described below. When a current dividend is greater than the annual premium then due, the excess will be applied toward repaying any unpaid insured policy loan. Any portion of such excess not needed to repay an insured policy loan will be used to provide paid-up additional whole life insurance on the Insured. Any loan repayment made in cash will first be applied toward repaying the non-insured part of your total policy loan. Loans and loan repayments made pursuant to this rider are made in accordance with and are subject to the "How a Loan Can Be Made" provision of the policy.

On each policy anniversary on which there is an insured policy loan on the policy, we will purchase one year term insurance on the life of the Insured in the amount of that total insured policy loan and loan interest accrued at the effective annual rate to the next policy anniversary. Any one year term insurance in effect at the death of the Insured will be included with the other insurance benefits of the policy. The one year term insurance purchased each year will expire without value on the last day of the policy year for which the purchase was made.

The cost of such term insurance is equal to its amount times the term insurance premium rate for the Insured's attained age and sex. We will set the term insurance premium rates for each year. The rates will not be more than those based on the Commissioners 1980 Male Extended Term Insurance Table with continuous functions and interest at 5% compounded annually.

R86-114                                                                                     *(continued on reverse side)*

This rider and the term insurance under it will no longer be in effect:

1.  if any premium for the policy remains unpaid at the end of its grace period, unless waived by a disability rider;

2.  if, upon your choice, any dividend is applied other than as stated in this rider;

3.  if the policy is paid-up;

4.  if the insurance under the policy terminates;

5.  if you put the policy's Automatic Premium Loan Option into effect;

6.  if you change the premium payment frequency to other than annual; or

7.  if the policy is continued after lapse as extended term or reduced paid-up insurance.

You may terminate this rider on any policy anniversary by asking for this in writing before then.

Once this rider has terminated, you may no longer choose this Additional Dividend Option.

If, while the Insured is alive, this rider is terminated between policy anniversaries, any one year term insurance then in effect will cease. If this happens, the part of the insured policy loan that was used to buy the term insurance for the remainder of that policy year will be considered repaid.

The Incontestability and Suicide Exclusion provisions of the policy also apply to this rider.

This rider is a part of the policy. Its benefit is subject to all the terms of this rider and the policy. This rider has no cash or loan value.

## AXA EQUITABLE LIFE INSURANCE COMPANY

Mark Pearson
Chief Executive Officer

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

R86-114

# Exchange
## Privilege
### Rider

*In this rider, "we," "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.*

You may exchange this policy for a new policy on the life of a new insured, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured is insurable for the plan and amount of insurance applied for.

2. The new insured must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of any premium due date if neither the original Insured nor the new insured is then over age 65.

4. This policy must be in effect on the exchange date with all premiums due having been paid, and with no premium then being waived by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; (b) evidence of the new insured's insurability satisfactory to us; and (c) payment of the first premium for the new policy plus any extra sum we may require. (Depending upon the plan and the amount applied for, we may make an allowance for the exchange, instead of requiring payment of an extra sum.)

6. We will require repayment of any loan and loan interest on this policy that is in excess of the loan value of the new policy at the time of exchange. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

**THE NEW POLICY.** Premiums for the new policy will be based on our rates in effect on its Register Date for the insurance age of the new insured on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the earlier of: (1) the date of the exchange; or (2) the policy anniversary of this policy next following the new insured's date of birth. The new policy may be on any permanent plan of insurance we agree to. The amount of insurance in the new policy will be the same as in effect in this policy on the date of exchange. Or you may choose a lower amount as mutually agreed upon to avoid or minimize any extra sum required for the exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

We will tell you on request the amount of the first premium for the new policy, and of any extra sum required or allowance to be made for the exchange.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

**AXA EQUITABLE LIFE INSURANCE COMPANY**

Mark Pearson
Chief Executive Officer

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

R79-77

Exchange Privilege

# *Additional*
# *Dividend Option Rider*

*In this rider, "we" means The Equitable Life Assurance Society of the United States. "You" and "your" mean the owner of the policy at the time an owner's right is exercised.*

This rider provides a dividend option in addition to those listed in the "Dividend Options" section of the policy to which it is attached. It is subject to the "How Dividends Are Paid" provision of the policy.

You may ask for this "Additional Dividend Option" in writing. If you do, it will go into effect on the later of the fourth policy anniversary or the policy anniversary next following the date we receive your written request for it. However, this option will not go into effect if on the date it otherwise would go into effect the policy is then rated-up in premiums or requires extra premiums.

While this option is in effect, no other dividend option in the policy will apply and the premiums under the policy will be due annually. On each policy anniversary:

1.  The current dividend will be used to help pay the annual premium then due; then

2.  To the extent necessary, dividend credits will be used to help pay the balance of that premium; and then

3.  Any excess of the amount of that premium over the sum of the amounts obtained in items 1 and 2 above will be paid by policy loan to the extent that the policy's loan value is then sufficient.

Any balance of a premium not paid in accordance with the preceding paragraph will then be due in cash. We will inform you in writing of any such balance due. For the purpose of item 2 above, dividend credits arising from dividends will be used before any dividend credits that comprise the guaranteed cash value of any paid-up additions under any Option To Purchase Paid-Up Additional Insurance Rider in the policy.

If part of a premium has been or is to be paid pursuant to item 3 above; then on each policy anniversary we will make a loan on the policy (called the "insured policy loan") equal to (1) such part, if any, of the premium due on that anniversary that is so paid; plus (2) any unpaid insured policy loan in effect immediately before such anniversary; plus (3) the cost of the one year term insurance to be purchased as described below. When a current dividend is greater than the annual premium then due, the excess will be applied toward repaying any unpaid insured policy loan. Any portion of such excess not needed to repay an insured policy loan will be used to provide paid-up additional whole life insurance on the Insured. Any loan repayment made in cash will first be applied toward repaying the non-insured part of your total policy loan. Loans and loan repayments made pursuant to this rider are made in accordance with and are subject to the "How a Loan Can Be Made" provision of the policy.

On each policy anniversary on which there is an insured policy loan on the policy, we will purchase one year term insurance on the life of the Insured in the amount of that total insured policy loan and loan interest accrued at the effective annual rate to the next policy anniversary. Any one year term insurance in effect at the death of the Insured will be included with the other insurance benefits of the policy. The one year term insurance purchased each year will expire without value on the last day of the policy year for which the purchase was made.

The cost of such term insurance is equal to its amount times the term insurance premium rate for the Insured's attained age and sex. We will set the term insurance premium rates for each year. The rates will not be more than those based on the Commissioners 1980 Male Extended Term Insurance Table with continuous functions and interest at 5% compounded annually.

R86-114

This rider and the term insurance under it will no longer be in effect:

1.  if any premium for the policy remains unpaid at the end of its grace period, unless waived by a disability rider;

2.  if, upon your choice, any dividend is applied other than as stated in this rider;

3.  if the policy is paid-up;

4.  if the insurance under the policy terminates;

5.  if you put the policy's Automatic Premium Loan Option into effect;

6.  if you change the premium payment frequency to other than annual; or

7.  if the policy is continued after lapse as extended term or reduced paid-up insurance.

You may terminate this rider on any policy anniversary by asking for this in writing before then.

Once this rider has terminated, you may no longer choose this Additional Dividend Option.

If, while the Insured is alive, this rider is terminated between policy anniversaries, any one year term insurance then in effect will cease. If this happens, the part of the insured policy loan that was used to buy the term insurance for the remainder of that policy year will be considered repaid.

The Incontestability and Suicide Exclusion provisions of the policy also apply to this rider.

This rider is a part of the policy. Its benefit is subject to all the terms of this rider and the policy. This rider has no cash or loan value.

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

Vice President
and Secretary

President

R86-114

# Disability
##          Premium Waiver
###                    Rider

*In this rider, "we," "our" and "us" mean The Equitable Life Assurance Society of the United States. "You" means the Owner of the policy at the time an Owner's right is exercised.*

**BENEFIT.** We will waive premiums for this policy when we receive proof that total disability of the Insured has existed continuously for at least six months, as provided in this rider.

If this total disability begins on or after the Insured's fifth birthday and before the age 60 anniversary, we will waive all premiums falling due while total disability continues.

If this total disability begins at or after the age 60 anniversary, we will waive only those premiums falling due before the age 65 anniversary while total disability continues.

We will waive premiums at the premium payment frequency in effect when total disability began. While premiums are being waived, insurance will continue as if the premiums had been paid.

**AGE.** In this rider, "age 60 anniversary" and "age 65 anniversary" mean the policy anniversary nearest the Insured's 60th and 65th birthdays, respectively.

**TOTAL DISABILITY.** Total disability means the Insured's complete inability, because of bodily injury or disease, to perform all of the substantial and material duties of his or her regular occupation for remuneration or profit. However, after 24 consecutive months of such disability, total disability will mean the Insured's complete inability to engage in any gainful occupation for which he or she is reasonably fitted by education, training, or experience.

We will also recognize the complete and irrecoverable loss of sight of both eyes, or the use of both hands or both feet, or of one hand and one foot as total disability. We will presume any such loss to be total disability even if the Insured engages in any occupation.

**NOT COVERED.** We will not waive premiums if total disability results from:

1. intentionally self-inflicted injury; or

2. service in the armed forces of any country at war, including declared and undeclared war and resistance to armed aggression.

We will not waive premiums for a total disability that begins before the Insured's fifth birthday, or that begins while this rider is not in effect.

**PROOF OF DISABILITY.** Before we waive any premiums, we must be given written notice of claim, and proof that total disability of the Insured has existed continuously for at least six months. This must be done while total disability continues and while the Insured is still living, or as soon as reasonably possible.

We may require proof at reasonable intervals that total disability continues. After total disability has continued for two years we will not require proof more than once a year. We will not require proof after the age 65 anniversary if premiums have been waived for the five preceding years.

We may require physical examination of the Insured by our medical representatives at our expense as part of any proof of total disability. We will not waive premiums if proof is not furnished as required.

**PREMIUMS.** Page 3 of this policy shows the additional premiums for this rider. If this rider is added after the policy is issued, the premiums will be shown on the Additional Benefits Rider. If total disability begins during a grace period, the overdue premium must be paid before we will approve any claim for waiver of premiums.

**TERMINATION.** This rider will no longer be in effect:

1. at and after the age 65 anniversary;

2. if any premium for this rider or this policy remains unpaid at the end of its grace period, unless waived by this rider; or

3. if the insurance under this policy terminates.

*(continued on reverse side)*

R 85-201NY   Disability Premium Waiver

You may terminate this rider on any premium due date by asking for this in writing. A claim based on total disability that begins before termination of this rider will not be affected by the termination.

**INCONTESTABILITY.** This rider will become incontestable only after it has been in effect, during the lifetime of the Insured and without the occurrence of total disability of the Insured, for two years from its Date of Issue. The Date of Issue is shown on Page 3 of this policy, or on the Additional Benefits Rider if this rider is added after the policy is issued.

**GENERAL.** This rider is a part of the policy. Its benefit is subject to all the terms of this rider and the policy.

This rider has no cash or loan value. It does not affect any net single premium or reserve referred to in the policy.

Waiver of premiums will not reduce any amount, including dividends, that we would otherwise pay. Any premium due during total disability that is paid and later waived will be refunded to the person who, in our judgment, is equitably entitled to receive it.

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES**

President

Vice President
and Secretary

R 85-201NY   Disability Premium Waiver

*Exchange*
      *Privilege*
             *Rider*

*In this rider, "we," "our" and "us" mean The Equitable Life Assurance Society of the United States. "You" means the Owner of the policy at the time an Owner's right is exercised.*

You may exchange this policy for a new policy on the life of a new insured, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured is insurable for the plan and amount of insurance applied for.

2. The new insured must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of any premium due date if neither the original Insured nor the new insured is then over age 65.

4. This policy must be in effect on the exchange date with all premiums due having been paid, and with no premium then being waived by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; (b) evidence of the new insured's insurability satisfactory to us; and (c) payment of the first premium for the new policy plus any extra sum we may require. (Depending upon the plan and the amount applied for, we may make an allowance for the exchange, instead of requiring payment of an extra sum.)

6. We will require repayment of any loan and loan interest on this policy that is in excess of the loan value of the new policy at the time of exchange.

We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

**THE NEW POLICY.** Premiums for the new policy will be based on our rates in effect on its Register Date for the insurance age of the new insured on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the earlier of: (1) the date of the exchange; or (2) the policy anniversary of this policy next following the new insured's date of birth. The new policy may be on any permanent plan of insurance we agree to. The amount of insurance in the new policy will be the same as in effect in this policy on the date of exchange. Or you may choose a lower amount as mutually agreed upon to avoid or minimize any extra sum required for the exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

We will tell you on request the amount of the first premium for the new policy, and of any extra sum required or allowance to be made for the exchange.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES**



## EQUITABLE

# EQUITABLE FINANCIAL LIFE INSURANCE COMPANY

## NAME CHANGE ENDORSEMENT

**EFFECTIVE DATE: June 15, 2020**

This Endorsement is part of the policy, contract, or certificate as of its Effective Date. It should be attached to and kept with the policy, contract, or certificate.

As of the Effective Date, wherever the name AXA Equitable Life Insurance Company appears in the policy, contract, or certificate, the name Equitable Financial Life Insurance Company is hereby substituted.

All other terms and provisions of the policy, contract, or certificate remain unchanged and are in full force and effect.

**EQUITABLE FINANCIAL LIFE INSURANCE COMPANY**

Mark Pearson
Chief Executive Officer

José Ramón González,
Chief Legal Officer and Secretary

2020EQFLIC



AXA Equitable Life Insurance Company
MONY Life Insurance Company of America
AXA Equitable Life and Annuity Company

# Life Insurance
## Beneficiary Change
Traditional, Term and Variable Life Series

**Return:**

**Express Mail:**
AXA Equitable Life Insurance Company
Life Operations
8501 IBM Dr, Suite 150
Charlotte NC 28262-4333

**Regular Mail:**
AXA Equitable Life Insurance Company
Life Operations
P.O. Box 1047
Charlotte, NC 28201-1047

**Toll-free Fax Number:**
(855) 268-6378

**For Assistance:**

**Call:**
(800) 777-6510
Monday - Thursday:
8:00 AM to 7:00 PM EST
Friday: 8:00 AM to 5:30 PM EST

**To Sign Up For eDelivery:**

Visit us at
**www.axa.com**

---

**Type of Request**

Please complete the sections listed below if you are requesting a:

• Beneficiary change — sections 1, 2, 3, 4, 5 and 6
  For general information regarding requirements for a change
  of Beneficiary, please see last page of form.

---

**1. Insured's Information** (Please Print)

Policy Number(s) (Required):

▮6693

Insured's Name: ____IOANNIS_____TRIANTAFILLOU_____
                     First              Middle/MI           Last

---

**2. Present Owner's Information** (Please Print)

Individual Owner(s) Name: ____IOANNIS_____TRIANTAFILLOU_____
(If other than Insured)   First          Middle/MI          Last

Joint Owner's Name: _____
                    First       Middle/MI      Last (if applicable)

Joint Owner's Name: _____
                    First       Middle/MI      Last (if applicable)

Corporate, Partnership, Charity/Non-Profit or Trust Name: _____

Corporate, Partnership, Charity/Non-Profit or Trust Name: _____

1894-C09-a2-0100298 0001260 of 0001265

06/04/20 08:27 ET   ArchB SC4INF ArchP 03838

## 3. Designation of New Primary Beneficiary(ies)

**Completing The Form**

- This form may be used for more than one policy, provided all policies insure the same person, have the same owner, and the same Beneficiary designation.
- For request to be accepted, all alterations must be initialed and dated by the policy Owner(s).
- The legal residence and mailing address of all proposed Beneficiaries are required.
- If the proposed Beneficiary is a Trust, the date of the Trust Agreement, name and address of Trustee, and Tax Identification Number (Social Security Number, Individual Taxpayer Identification Number, Employer ID Number) must be indicated.
- For a Beneficiary change on a Joint Life policy, a family-type policy, or a policy that includes a Family Plan Insurance provision, Renewable Term Insurance rider on an Additional Insured, or Children's Term Insurance rider, whereby multiple insured's are covered under a single policy, it is necessary to identify the Insured to whom the change applies as individual Beneficiary designations are permitted for each insured person.
- Before completing this request, please read the Beneficiary provisions in the General Information section at the back of this form.
- Do not return the policy with this request.

**Primary Beneficiary(ies):....**

List name of new Primary Beneficiary(ies), relationship to the Insured/Annuitant, Address, Phone number, Taxpayer Identification Number, Date of birth and Email address (please print):

**Beneficiary 1**

| NIKOLAOS | J. | RENTOULIS | Individual |
|---|---|---|---|
| **Name of Beneficiary: First** | **Middle/MI**   Last | | **Type: Individual/Trust/Corporation/Other (list)** |
| 94 Baldwin Lane | Mahopac | NY | 10541 |
| **Primary Address of Beneficiary Street** | **City** | **State** | **Zip** |
| SSN ☒ TIN ☐ EIN ☐ ████████ | Cousin | | 100% |
| | **Relationship to Insured** | | **Percentage of Benefits** |
| █████ 1955 | (845) 248-2083 | | plaza565@aol.com |
| **DOB or Trust/Incorporation Date** | **Phone Number** | | **Email Address** |
| **Designation/Additional Information** | **Nature of Relationship (used for entities)** | | **State and Country of Incorporation (used for entities)** |
| **Nature/Purpose of Business (used for entities)** | **GIIN (used for entities)** | | **NAICS Code (used for entities)** |

**Beneficiary 2**

| | | | |
|---|---|---|---|
| **Name of Beneficiary: First** | **Middle/MI**   Last | | **Type: Individual/Trust/Corporation/Other (list)** |
| **Primary Address of Beneficiary Street** | **City** | **State** | **Zip** |
| SSN ☐ TIN ☐ EIN ☐ | | | |
| | **Relationship to Insured** | | **Percentage of Benefits** |
| **DOB or Trust/Incorporation Date** | **Phone Number** | | **Email Address** |
| **Designation/Additional Information** | **Nature of Relationship (used for entities)** | | **State and Country of Incorporation (used for entities)** |
| **Nature/Purpose of Business (used for entities)** | **GIIN (used for entities)** | | **NAICS Code (used for entities)** |

**Beneficiary 3**

| | | | |
|---|---|---|---|
| **Name of Beneficiary: First** | **Middle/MI**   Last | | **Type: Individual/Trust/Corporation/Other (list)** |
| **Primary Address of Beneficiary Street** | **City** | **State** | **Zip** |
| SSN ☐ TIN ☐ EIN ☐ | | | |
| | **Relationship to Insured** | | **Percentage of Benefits** |
| **DOB or Trust/Incorporation Date** | **Phone Number** | | **Email Address** |
| **Designation/Additional Information** | **Nature of Relationship (used for entities)** | | **State and Country of Incorporation (used for entities)** |
| **Nature/Purpose of Business (used for entities)** | **GIIN (used for entities)** | | **NAICS Code (used for entities)** |

1894-C09-a2-0100298 0001260 of 0001265

## 4. Designation of New Contingent Beneficiary(ies)

**Contingent Beneficiary(ies):**
Provide name of new Contingent Beneficiary(ies), relationship to the Insured/Annuitant, Address, Phone number, Taxpayer Identification Number, Date of birth and Email address (please print):

**Beneficiary 1**

| DINA | | RENTOULIS | | Individual | |
|---|---|---|---|---|---|
| Name of Beneficiary: First | Middle/NI | Last | | Type: Individual/Trust/Corporation/Other (list) | |
| 94 Baldwin Lane | | Mahopac | NY | | 10541 |
| Primary Address of Beneficiary Street | | City | State | | Zip |
| SSN ☒ TIN ☐ EIN ☐ ▮▮▮ | | Wife of cousin NIKOLAOS J. RENTOULIS | | 100% | |
| | | Relationship to Insured | | Percentage of Benefits | |
| 1963 | | (845) 628-8898 | | plaza565@aol.com | |
| DOB or Trust/Incorporation Date | | Phone Number | | Email Address | |
| | | | | | |
| Designation/Additional Information | | Nature of Relationship (used for entities) | | State and Country of Incorporation (used for entities) | |
| | | | | | |
| Nature/Purpose of Business (used for entities) | | GIIN (used for entities) | | NAICS Code (used for entities) | |

**Beneficiary 2**

| | | | | | |
|---|---|---|---|---|---|
| Name of Beneficiary: First | Middle/NI | Last | | Type: Individual/Trust/Corporation/Other (list) | |
| | | | | | |
| Primary Address of Beneficiary Street | | City | State | | Zip |
| SSN ☐ TIN ☐ EIN ☐ | | Relationship to Insured | | Percentage of Benefits | |
| | | | | | |
| DOB or Trust/Incorporation Date | | Phone Number | | Email Address | |
| | | | | | |
| Designation/Additional Information | | Nature of Relationship (used for entities) | | State and Country of Incorporation (used for entities) | |
| | | | | | |
| Nature/Purpose of Business (used for entities) | | GIIN (used for entities) | | NAICS Code (used for entities) | |

## 5. Special Instructions

If NIKOLAOS J. RENTOULIS AND DINA RENTOULIS SHOULD BOTH PREDECEASE ME, THEN I LEAVE 100% OF THE INSURANCE

PROCEEDS TO THEIR ISSUE, PER STIRPES. THEIR CHILDREN ARE TAMMY THANOS AND CHRISTINA RENTOULIS

1894-C09-a2-0100288 0001261 of 0001266

06/04/20 08:27 ET　ArchB SC4INF ArchP 03839

## 6. Signature Section

Are any of the named Beneficiaries above a Viatical or Life Settlement Company?   ☐ Yes ☒ No
By my signature below, I understand this change of Beneficiary shall revoke any previous Beneficiary designation or election of a payment option.

_Louyuss  Tvinuulafildew_          _loannis  Txionfatfibbou_  22-5-2020
**Signature of Owner (Title, if applicable)**          **Print Owner's Name**          **Current Date (mm/dd/yyyy)**

_____          _____          _____
**Signature of Owner (Title, if applicable)**          **Print Owner's Name**          **Current Date (mm/dd/yyyy)**

_____          _____          _____
**Signature of Owner (Title, if applicable)**          **Print Owner's Name**          **Current Date (mm/dd/yyyy)**

_____          _____
**Signature of Collateral Assignee (Company and Title, if applicable)**          **Current Date (mm/dd/yyyy)**

1694-C09-e2-0100298 0001261 of 0001266

## SUPPLEMENT TO APPLICATION PART 1
**FOR:** ☒ **The Equitable Life Assurance Society of the United States**
☐ **The Equitable Variable Life Insurance Company**

**Note:** *This Supplement must be completed by the Person Proposed for Insurance in all cases. No application for life insurance will be accepted without this Supplement.*

---

Please complete the following:

1. Has any Person Proposed for Insurance ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)? Give full details below.  ☐ Yes  ☒ No
2. Has any Person Proposed for Insurance ever been treated by a member of the medical profession for AIDS or ARC? Give full details below.  ☐ Yes  ☒ No

Details. _____

_____

_____

_____

_____

_____

_____

---

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be made a part of the application for insurance. The Insurer may rely on them in acting on this application.

Dated at _____*Blauvelt,*_____ _____*N.Y.*_____ on _*11-8*_ 19 *88*
(City)            (State)

_____*Loukris Triaufahllur*_____
Signature of Proposed Insured, or Applicant if Proposed Insured is a Child

_____
Signature of Additional Insured

_____*John J. Lino*_____
Signature of Agent

180-311A



## Application Part 1 For Life Insurance To
### THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

☑ REG.  ☐ JUV.
☐ ESP  ☐ OPAI

**1. Proposed Insured**  a. Print name to appear on policy.

IOANNIS   TRIANTAFILLOU
First       Middle Initial      Last

b. ☑ Mr.  ☐ Miss  ☐ Mrs.  ☐ Ms.  ☐ Other Title
c. List all current occupations—Give Title(s) and Duties
CO-OWNER T.I.P.I. RESTAURNTS, INC.
Manucurial duties at restaurant

d. Date of Birth _____ 19 55
   Month   Day   Year
e. Age Nearest Birthday ___ 33
f. Place of Birth: State of ___ GREECE
g. Residence: State of ___ New York
h. ☑ Male   ☐ Female

**2. Plan**   **Amount** of Insurance
WHOLE LIFE 50    $ 500,000

**3. Optional Benefits**
☐ Accidental Death Benefit*(Specify Amount):   $_____
☑ Disability Premium Waiver*
☐ Automatic Premium Loan (Not for Term policies, or while premiums are paid monthly)
☐ Option to Purchase Add'l Ins. (Issue ages to 37 only): $_____
Term Riders: (Only one may be elected for Insured. None available if Proposed Insured is a Child (Issue Age 0-14)
Decreasing Term                              Per Month
☐ Family Income: _____Years        $_____
☐ Mortgage Prot.: _____Years  Initial Amt.: $_____
Renewable Term
☐ On Insured:                        $_____
☐ On Additional Insured (See page 2):  $_____
☐ Children's Term (See page 2):  $_____ Units
*If Proposed Insured is a Child (Issue Age 0-14) see Limitations on p.2. OPAI and Decreasing Term not available for ESP.

**4. Beneficiary** for Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured.
STAVRIANI TRIANTAFILLOU, MOTHER AND
CHRISTOFOROS TRIANTAFILLOU, BROTHER, EQUALLY.

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.
The Beneficiary under any Term Insurance Rider on an Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions.

**5. Owner**  Owner's Soc. Sec. or Tax No. _____
The Owner is ☑ Proposed Insured
☐ Applicant for Child (See 10.c.)
☐ Other (Give Full Name):
If "Other", complete the following:
☐Mr.  ☐Miss  ☐Mrs.  ☐Ms.  ☐ Other Title _____
Relationship to Insured _____
Specify a successor Owner if desired

If the Proposed Insured or the Applicant for a Child is not the Owner and if all persons designated die before the Insured, the Owner will be the estate of the last of such persons to die except where the Insured is a Child (see Note in 10.c.).

**6. Mailing Address** ☑Business (Give Full Name) ☐Residence

B L A U V E L T   C O A C H   D I N E R
No.         Street                Apt.
RT 3 0 3   B L A U V E L T
City
N E W   Y O R K   ▨ 1 0 9 1 3
State                          Zip

**7. Premium Payment Plan**
☐ Annual   ☐ Semi-Annual   ☐ Quarterly
☑ Monthly   ☐ System-Matic (Attach S-M Form)
☐ Single
☐ Military Allotment: Branch _____
                    Register Date _____
☐ Salary Allotment: Register Date _____
Unit Name _____
Unit/Sub-Unit No. if established:
| | | | | | | | | |
Divisible by ☐ 2 ☐ 4 Payroll No. _____
☐ Hold Premium $ _____

**8. Dividend Election**
☐ Economatic Type Policies
☑ Additions*          ☐ Premiums
☐ Accumulations       ☐ Cash
☐ Plan 'AD'           } Term Dividend
☐ Plan 'B'            } Provision**
   *Not Available for Term policies
**Not Available for Term policies or ESP.

**9. Special Instructions**
a. ☐ Preliminary Term to: _____
       Month  Day  Year
b. ☐ Date to save insurance age: _____
c. Other:
BASIC POLICY COST $ 502.00 / MO.
DPW.                    35.00 / MO
PUA RIDER               83 / MO.
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

180-301L                          Cat. No. 105442                          1

## 10. Complete if Proposed Insured is a Child (Issue Ages 0-14).

a. Will there be more life insurance in effect on the Child than on any older child in the family?  ☐ Yes  ☐ No
   If yes, explain: _____

b. **Applicant-Complete if other than the Child.**
   i. _____
      First Name          Middle Initial          Last Name
   ii. ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title_____
   iii. Date of Birth_____19____
                      Month   Day   Year
   iv. ☐ Male     ☐ Female
   v. Relationship to Child: _____
   vi. Total Life Insurance now in effect:  $_____

c. **Owner.** If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designation include Owner's **Full Name, Relationship** to Child, and Social Security or Tax Number).
   NOTE: *Consider designating an adult secondary Owner to*

*reduce the chance of a minor Child becoming the Owner. If all persons designated die before the Child, the Owner will be the Child.*

d. **Optional Benefit On Applicant.**
   ☐  Supplemental Protective Benefit. Give Applicant's:
   i. Age Nearest          ii. Place of
      Birthday _____      Birth _____
                                        State
   iii. Height_____Ft.____In. Weight_____lbs.
   iv. Occupations-Give Title(s) and Duties:_____
   _____

   *Also answer questions on page 3 as to Applicant.*

e. *Limitations On Child's ADB and DPW Benefits.*
   If the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
   If the Disability Premium Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

## 11. Complete for Children's Term Rider.

☐  For Fixed Amount under ESP: Give names of Children below.
☐  For Any Other Amount or Plan: Give Names of Children below and answer the Questions on page 3 as to each Child.

CHILDREN PROPOSED FOR INSURANCE:
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| First Name | Middle Initial | Last Name | Sex | Date of Birth | | |
|---|---|---|---|---|---|---|
| | | | | Mo. | Day | Yr. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## 12. Complete for Renewable Term Rider on Additional Insured.

Complete below and answer the Questions on page 3 as to the Additional Insured.
☐  For ESP, the Additional Insured is to be the Spouse (subject to the Spouse amount limit).

PROPOSED ADDITIONAL INSURED
a. Print name as it is to appear on the Policy.
   _____
   First          Middle Initial          Last
b. List all current occupations—Give Title(s) and Duties.
   _____
   _____

c. Date of Birth: Mo._____Day_____Yr. 19____
d. Age Nearest Birthday _____
e. Place of Birth: State of _____
f. Residence: State of _____
g. ☐ Male     ☐ Female
h. Owner's Relationship to Additional Insured: _____

## 13. Complete if Using Existing Option to Purchase Insurance.

a. **If Option is under Individual Policy:**
   i. Policy No._____ ii. Option Date_____
   iii. Option Amount: $_____
   iv. ☐ Regular Option or
       ☐ Option on Birth or Adoption of Child
          Child's Name _____
          Date of Birth or Adoption _____
   v. If applying for Disability Premium Waiver, is Proposed Insured now totally disabled as defined in the Disability Premium Waiver provision of the above policy? ☐ Yes ☐ No
b. **If Option is under Group Policy:**
   i. Policy No._____ ii. Option Date_____

iii. Employer's Name_____
iv. Maximum Amt. Available Under Option: $_____

This application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy The Equitable would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 *only if evidence of insurability is required* in connection with an optional benefit or any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision (the option insurance).

180-301L                    NO. C  53630                    2

**OTHER INFORMATION—Has any Person Proposed for Insurance:**

**14.a.** Ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☒ No

**b.** Any plan to travel or reside outside the U.S.? (Give full details.) ☐ Yes ☒ No

**c.** Any other life insurance now in effect or application now pending? (State companies and amounts.) ☐ Yes ☒ No

**d.** Smoked cigarettes within the last 12 months? ☐ Yes ☒ No

**15.a.** In the last year flown other than as a passenger or plan to do so? ☐ Yes ☒ No
If yes: Total flying time at present_____Hours;
Last 12 mos._____Hours;  Next 12 mos._____Est. Hours.
(Complete Aviation Supplement for pilot instruction; competitive, test, stunt or military flying; or crop dusting.)

**b.** Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☒ No

**c.** Ever had an application for life or health insurance declined,

that required an extra premium or was otherwise modified? (Give full details.) ☐ Yes ☒ No

**d.** Replaced or changed any existing insurance or annuity (or any plan to do so) assuming the insurance applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☒ No

**Answer Questions 16, 17 and 18 only if Non-Medical.**

**16.** Proposed Insured: Height _5_ Ft. _11_ In. Weight _174_ lbs.
Additional Insured: Height____Ft.____In. Weight____lbs.

**Has any Person Proposed for Insurance:**

**17.a.** Ever been treated for or had any indication of heart trouble, stroke; high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☒ No

**b.** In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☒ No

**18.a.** In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.) ☐ Yes ☒ No

**b.** In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.) ☐ Yes ☒ No

**19. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. *For 17 and 18 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.*

| No. | Name of Person Affected | Details |
|-----|-------------------------|---------|
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |

**20. Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:**
Have the undersigned read and do they agree to the conditions of The Equitable's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in that Agreement must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation? ☒ Yes ☐ No (If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.)
☒ Amount Paid: $ _545.33_ (Draw checks to order of The Equitable.)   ☐ Payroll deduction authorization signed.

**AGREEMENT.** Each signer of this application agrees that:

(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. The Equitable may rely on them in acting on this application.

(2) The Equitable's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect, if the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed Insured is living; (b) before any Register Date specified in this application; and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material

change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of The Equitable's rights or requirements. The Equitable shall not be bound by any information unless it is stated in Application Part 1, 1A or 2.

Dated at _Pleasant   NY_ on _11-8 1988_
      City     State

(X) _Ioannis   Triantafylou_
Signature of Proposed Insured (Employee for ESP) or of Applicant if Proposed Insured is a Child, Issue Age 0-14.

_____
Signature of Additional Insured if required.

_____
Signature of Purchaser if not Proposed Insured or Applicant. (If corp. show firm's name and signature of authorized officer.)

Signature of Agent _John J. Pinos_

180-301L                                                                                                    3

**Application Part 2**

☒ **To The Equitable Life Assurance Society of the United States**
☐ **Or To Equitable Variable Life Insurance Company**

(180-M205M)

Reason for submission of this form:   ☒ New Policy   ☐ Policy Change   ☐ Reinstatement

1. a. Proposed Insured (Please Print)
   First Name: *IOANNIS*   Middle Initial: ___   Last Name: *TRIANTAFILLOU*
   b. Height: 5 ft. 9 in.   c. Weight: 180 lbs.   d. Birth Date: Mo. ▮ Day ▮ Yr. 55   e. ☒ Male ☐ Female

2. a. Name and address of personal physician (or medical facility used instead): (If none, so state) *NONE*
   b. Date and reason last consulted if within the last 5 years:
   c. What treatment was given or recommended? (If none, so state)

3. Has Proposed Insured ever been treated for or ever had any known indication of: (Circle items that apply)   Yes  No

   a. Disease or disorder of eyes, ears, nose or throat?   ☐ ☒
   b. Dizziness, fainting, convulsions; paralysis or stroke; psychiatric, psychological or emotional problem or disturbance; mental or nervous disease or disorder?   ☐ ☒
   c. Shortness of breath; blood spitting; bronchitis, asthma, emphysema, tuberculosis or other chronic respiratory disease or disorder?   ☐ ☒
   d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels?   ☐ ☒
   e. Ulcer, hernia, colitis, intestinal bleeding; jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder?   ☐ ☒
   f. Sugar, albumin, blood or pus in urine; stone or other disease or disorder of kidney or bladder?   ☐ ☒
   g. Diabetes; cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder?   ☐ ☒
   h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints?   ☐ ☒
   i. Deformity, lameness or amputation?   ☐ ☒
   j. Allergies; anemia; other blood or lymph disease or disorder?   ☐ ☒
   k. Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy?   ☐ ☒

4. Is Proposed Insured now under observation or taking treatment?

5. Has Proposed Insured:
   a. Ever used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics, except as prescribed by a physician?   ☐ ☒
   b. Ever received counseling or treatment regarding the use of alcohol or drugs?   ☐ ☒

6. Other than as stated in answers to Questions 2-5, has Proposed Insured within the last 5 years:
   a. Consulted or been examined or treated by any physician or practitioner?   ☐ ☒
   b. Had any illness, injury, or surgery?   ☐ ☒
   c. Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility?   ☐ ☒
   d. Had electrocardiogram, X-ray, or other diagnostic test?   ☐ ☒
   e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?   ☐ ☒

7. Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months?

8. Have any of the Proposed Insured's parents, brothers or sisters ever had cancer, diabetes, high blood pressure or heart disease before age 60? If yes, specify person and condition.

**9. Family History:**

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 78 | Old Age | |
| Mother | 70 | | |
| Brothers (1) and Sisters | 44 | Good Health | |

DETAILS FOR YES ANSWERS. Include:
i. Question Number.
ii. Diagnosis and Treatment.
iii. Results.
iv. Dates and Duration.
v. Names and Addresses of all attending physicians and medical facilities.

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on the application or making the policy change or reinstatement.

Dated at *BLAUVELT*   *NY*   on *Nov. 17* 1988
(city)   (state)

Signature of Proposed Insured: *Ioannis Triantafillou*

Witness: *AHd*

180-M205M   (Ed. 2-87)

redefining ∕ standards®

**The Equitable Life Assurance Society of the United States**

**787 Seventh Avenue, New York, N.Y. 10019**

*LIFE*

*INSURANCE*

*POLICY*

Whole Life—Level Face Amount Plan. Insurance payable upon death.
Premiums payable for life. Policy participates in dividends.

No. 126-51