UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUITABLE FINANCIAL LIFE INSURANCE COMPANY,<br><br>    Interpleader Plaintiff,<br><br>v.<br><br>ALYSHA TRIANTAFILLOU, ALYSHA TRIANTAFILLOU AS ADMINISTRATRIX OF THE ESTATE OF IOANNIS TRIANTAFILLOU, TAMMY THANOS, CHRISTINA STEFANOPOULOS, ROSEMARIE ZOTO, LOUIS ZOTO<br><br>    Interpleader Defendants. | C.A. No.: 7:23-cv-07905-PMH |

**AMENDED COMPLAINT FOR INTERPLEADER**

Plaintiff Equitable Financial Life Insurance Company *f/k/a* AXA Equitable Life Insurance Company ("Equitable"), by and through its undersigned counsel, hereby files this Amended Interpleader Complaint against Defendants Alysha Triantafillou ("Alysha"), individually and as Administratrix of the Estate of Ioannis Triantafillou; Tammy Thanos ("Tammy"); Christina Stefanopoulos ("Christina"), Rosemarie Zoto ("Rosemarie"), and Louis Zoto ("Louis") (collectively, the "Interpleader Defendants") and states as follows:

**PARTIES**

1. Equitable is a corporation organized and existing under the laws of the state of New York, with its principal place of business in New York. Equitable is domiciled and is a citizen of the state of New York for purposes of 28 U.S.C. § 1332(c)(1).

2. Upon information and belief, the insured Ioannis Triantafillou ("Insured") was a resident in Westchester County, New York and domiciled in South Kynouria, Greece.

3. Upon information and belief, Alysha is the daughter of the Insured and has been appointed as the administratrix of the Insured's estate (the "Estate") by the Westchester County Surrogate's Court in New York. Alysha, in her role as administratrix of the Estate, is deemed to be a citizen of a foreign state, South Kynouria, Greece.

4. Upon information and belief, Alysha, in her individual capacity, is a citizen and resident of the state of Pennsylvania. Alysha is named in this action individually as a claimant of the insurance proceeds at issue.

5. Upon information and belief, Tammy is a citizen of the state of New York and a resident of Putnam County. Tammy is named in this action as a claimant of the insurance proceeds at issue.

6. Upon information and belief, Christina is a citizen of the state of New York and a resident of Westchester County. Christina is named in this action as a claimant of the insurance proceeds at issue.

7. Upon information and belief, Rosemarie is a citizen of the state of Florida and a resident of Palm Beach County. Rosemarie is named in this action as a claimant of the insurance proceeds at issue.

8. Upon information and belief, Louis is a citizen of the state of Florida and a resident of Palm Beach County. Rosemarie is named in this action as a claimant of the insurance proceeds at issue.

## JURISDICTION AND VENUE

9. This action is brought as a statutory interpleader pursuant to 28 U.S.C. § 1335.

10. This Court has subject matter jurisdiction over this action as there is minimal diversity of citizenship between the Interpleader Defendants and the amount in controversy exceeds $500.00.

11. This Court has personal jurisdiction over the Interpleader Defendants. In this regard, 28 U.S.C. § 2361 provides for nationwide service of process and confers upon the Court the authority to provide the relief requested herein.

12. Venue is proper in the United States District Court for the Southern District of New York as this action is brought in the judicial district in which one or more of the claimants reside, all pursuant to 28 U.S.C. § 1397.

## FACTS SUPPORTING INTERPLEADER: BENEFICIARY DESIGNATIONS

13. On or about November 17, 1988, Equitable issued to the Insured a life insurance policy bearing number xxxx6693 (the "Policy") in the amount of $500,000.00 (the "Death Benefits"). Attached hereto as Exhibit A is a redacted copy of the original application for the Policy.

14. The Policy establishes that "[t]he [b]eneficiary is as stated in the application, unless later changed." In addition, the Policy states that "[i]f there is no designated [b]eneficiary living at the death of the Insured, [Equitable] will pay the benefits to the surviving children of the Insured in equal shares. If none survive, we will pay the Insured's estate." Attached hereto as Exhibit B is a redacted copy of the Policy.

15. The beneficiaries of the Policy, as designated in the application, were Stavriani Triantafillou, listed as the Insured's mother, and Christoforos Triantafillou, listed as the Insured's brother. These beneficiaries were to take in equal shares. See Exhibit A.

16. In or around December 6, 2019, Equitable received a change of address form, reflecting a prior address for the Insured as "Apt. 7H, 151 S. Highland Ave, Ossing NY 10562-6043," and a new address of "94 Baldwin Lane c/o Nikolaos Rentoulis, Mahopac, NY 10541." Attached hereto as <u>Exhibit C</u> is a redacted copy of the new address request.

17. On or around April 15, 2020, Equitable received a telephonic request for an illustration of current and projected Policy information. By correspondence dated April 23, 2020, sent to the Insured "C/o Nikolaos Rentoulis, 94 Baldwin Lane, Mahopac NY 10541," Equitable provided the Insured with the requested illustration. Attached hereto as <u>Exhibit D</u> is a redacted copy of the correspondence and attached illustration.

18. Equitable received a Life Insurance Beneficiary Change form dated May 22, 2020 (the "Beneficiary Change Form"), requesting that the primary beneficiary be changed to Nikolaos J. Rentoulis ("Nikolaos"), and that the contingent beneficiary be changed to Dina Rentoulis ("Dina," and collectively, the "Cousin Beneficiaries"). The Beneficiary Change Form stated that Nikolaos was the Insured's cousin and Dina was Nikolaos's wife. Attached hereto as <u>Exhibit E</u> is a redacted copy of the Beneficiary Change Form.

19. The Beneficiary Change Form contained "Special Instructions," providing that if the Cousin Beneficiaries predeceased the Insured, 100% of the insurance proceeds owed under the Policy were to be left to the Cousin Beneficiaries' "issue, per stirpes," and noting that "their children are Tammy Thanos and Christina Rentoulis." *See* <u>Exhibit E</u>.

20. By letter dated June 9, 2020, Equitable sent a letter to the Insured "C/o Nikolaos Rentoulis, 94 Baldwin Lane, Mahopac NY 10541," confirming the changes to the beneficiary designation to Nikolaos as the primary beneficiary, Dina as the secondary beneficiary, and Tammy and Christina as tertiary beneficiaries. *See* <u>Exhibit E</u>.

21. Upon information and belief, Nikolaos died on April 22, 2021, and Dina died on June 5, 2021, both predeceasing the Insured. Attached hereto as <u>Exhibit F</u> is a redacted copy of a Claim to Life Insurance Benefits form ("Claim Form"), enclosing attachments, including obituaries for the Cousin Beneficiaries.

22. On or about November 29, 2022, the Insured passed away in Tripoli, Arcadia, Greece. Attached hereto as <u>Exhibit G</u> is a redacted copy of the Death Registration, which upon information and belief, is a translation of the Greek Death Certificate. A redacted copy of the Greek Death Certificate[1] is attached to the Claim Form in <u>Exhibit F</u>.

23. On December 13, 2022, Tammy reported the Insured's death to Equitable, and in response, by email on that same day, Equitable sent Tammy instructions on submitting a claim for the Death Benefits, including the documents required to support her claim for benefits. Attached hereto as <u>Exhibit H</u> is a redacted copy of the correspondence.

24. By email on January 26, 2023, Alysha submitted a Claim Form dated January 18, 2023, and supporting documents thereby making an individual claim to the proceeds due under the Policy in her capacity as the Insured's surviving child. *See* <u>Exhibit F.</u>

25. Alysha submitted a Statement of Surviving Children indicating that she is the sole surviving child of the Insured. *See* <u>Exhibit F</u>.

26. By email on March 16, 2023, Tammy wrote Equitable identifying herself as the tertiary beneficiary of the Policy as her parents—the Cousin Beneficiaries—were deceased. Tammy enclosed a death registration for the Insured and death certificates for the Cousin Beneficiaries. Attached hereto as <u>Exhibit I</u> is a redacted copy of the correspondence.

---

[1] The Death Certificate is written in Greek, and therefore, Equitable has fully redacted the Certificate and another document in Exhibit F to avoid any inadvertent disclosure of confidential information.

27. By email on March 21, 2023, Alysha's counsel sent a letter to Equitable stating that Alysha is the daughter of the Insured and sole heir to the Estate and further that the Estate is the rightful beneficiary of the Death Benefits. Counsel asserted that the Beneficiary Change Form was forged as the Insured's "medical records, and the dual Guardianship proceedings submitted in the Westchester Court as well as in Greece," show that the Insured was "diagnosed with mental impairments that would have made [the Insured] incompetent to make legal or financial decisions for himself from 2014 until the time of his death, and from 2016 onward he was not able to control a pen in order to write." Counsel requested Equitable "suspend all decisions related to the payment of the death claim on the subject policy" and to provide information "relative to the interjection of a fraud claim." A redacted copy of the correspondence is attached hereto as Exhibit J and incorporated herein by reference.

28. On July 14, 2023, counsel for Equitable responded to Alysha's counsel with a request for documents, including medical records, supporting Alysha's claim to the Death Benefits. Equitable's counsel also requested confirmation on whether Alysha had been appointed as the administratrix of the Estate. A copy of the correspondence is attached hereto as Exhibit K.

29. On or about July 26, 2023, Alysha's counsel responded to Equitable's July 14, 2023 email reiterating her position that the Beneficiary Change Form was fraudulent because the Insured "was physically unable to control a pen in order to write as of 2016," and the Change Form was dated 2020. Counsel further indicated that intestacy proceedings were commenced with the Westchester County Surrogate's Court, and Alysha was waiting for appointment as administratrix. Counsel also indicated that upon Alysha's appointment, he would provide medical records to support Alysha's position. Finally, Counsel requested Equitable to suspend payment of the Death Benefits to any person other than the Estate and threatened litigation in the event Equitable pays

any other person.  A redacted copy of the correspondence is attached hereto as <u>Exhibit L</u> and incorporated herein by reference.

30. Pursuant to Letters of Administration issued on July 31, 2023, Alysha was named the administratrix of the Estate.  The Letters list the Insured's domicile as South Kynouria, Greece.  Attached hereto as <u>Exhibit M</u> is a copy of the Letters of Administration as received by Equitable.

31. By email on August 9, 2023, Alysha's counsel sent a letter dated August 8, 2023 to Equitable enclosing a Decree Granting Administration and Letters of Administration from the Westchester County Surrogate's Court indicating that Alysha was appointed as sole fiduciary for the Estate. Counsel also "reiterate[d] [his] admonishment against . . . payment of the Life insurance proceeds on the above-referenced policy."  Attached hereto as <u>Exhibit N</u> is a copy of the transmittal email and attached as <u>Exhibit O</u> is a redacted copy of the letter, including the Decree and Letters as received by Equitable.

32. On August 9, 2023, counsel for Equitable acknowledged receipt of the August 8, 2023 letter, and asked Alysha's counsel to advise on the timing of submittal of documents, including medical records as referenced in the March 21, 2023 letter, to support Alysha's claim to the Death Benefits.  *See* <u>Exhibit P</u>.

33. As of the date of this filing, Equitable has not received any additional correspondence from Alysha's counsel, including any medical records.

34. By letters dated July 28, 2023, Equitable sent Christina and Tammy notices of competing claims for the Death Benefits preventing Equitable from paying any funds until the parties reach a mutually agreed upon settlement or a court determined resolution (hereinafter referred to as the "Standstill Letters"). Copies of the Standstill Letters are attached hereto as <u>Exhibit Q</u>.

35. By letter dated August 10, 2023, Christina authorized Equitable to retain the Death Benefits on deposit pending a mutually agreed upon settlement or court intervention. Christina did not consent to Equitable sharing her personal information with the adverse claimant for any purpose, including to facilitate a resolution. Attached hereto as <u>Exhibit R</u> is the referenced correspondence.

36. By letter dated August 21, 2023, Tammy authorized Equitable to retain the Death Benefits on deposit pending a mutually agreed upon settlement or court intervention. Tammy did not consent to Equitable sharing her personal information with the adverse claimant for any purpose, including to facilitate a resolution. Attached hereto as <u>Exhibit S</u> is the referenced correspondence.

**FACTS SUPPORTING INTERPLEADER: ASSIGNMENTS**

37. Equitable received an Assignment of Life Insurance Policy as Collateral executed by the Insured on or around November 8, 2002, in favor of CIT Small Business Lending Corporation ("CIT Assignment"). Attached and redacted hereto as <u>Exhibit T</u> is the CIT Assignment.

38. Equitable received an Assignment of Life Insurance Policy as Collateral executed by the Insured on or around January 22, 2023, in favor of Louis and Marie T. Zoto ("Zoto Assignment"). The Zotos' address as reflected on the Assignment is 1006 Ingram Court, Ambler, PA 19002 ("Address of Record"). Attached and redacted hereto as <u>Exhibit U</u> is the Zoto Assignment.

39. By letter dated January 30, 2003 and sent to the Zotos at their Address of Record, Equitable confirmed recording of the Zoto Assignment and informed the Zotos that there was an

existing Assignment on the Policy in favor of CIT Small Business Lending.  Attached and redacted as <u>Exhibit V</u> is the referenced correspondence.

40. The Assignments provide the assignees with "[t]he sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity." (*See* Assignments ¶ B.1, Exhibits T and U.)  The Assignments further provide, among other things that it "is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities")." (*See id.* ¶ D.)  The Assignments states that the assignee agrees "[t]hat any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed." (*Id.* ¶ E.1.)  In addition, the Assignment provides that "[t]he Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to e paid to the Assignee." (*Id.* ¶ F.)

41. Upon information and belief, the Insured received loans from CIT and the Zotos related to certain businesses, which possibly include Warminster West Diner in Warminster, Pennsylvania, and T.I.P.I. Restaurants Inc. in New York.  The Insured made the Assignments as collateral for the loans.

9

42. Upon information and belief, ReadyCap Lending LLC ("ReadyCap") acquired a portfolio of loans from CIT Small Business Lending Corporation, including the loan related to the Insured. Upon information and belief, and pursuant to Equitable's investigation, the application related to the loan was withdrawn, and therefore, the loan was never funded. Accordingly, upon information and belief, ReadyCap is not asserting a claim for Death Benefits.

43. Based on a search of public records, the Zotos sold the property associated with the Address of Record in 2018 but did not update their address with Equitable.

44. From February 2024 through March 2024, and in connection with the pending interpleader action, Equitable undertook efforts to locate the Zotos. Upon locating the Zotos on March 1, 2024 through a lawyer who previously represented them in litigation, Equitable was informed that the liability underlying the Assignment was still outstanding. Equitable was not provided any records to inform it of the value of the liability. By email dated March 4, 2024, from the Zotos' lawyer, the Zotos requested a claim form for the Death Benefits. The Zotos' lawyer also noted "that the Insurer is authorized to recognize the Assignee's claims to rights under the policy without investigating the reason for any action taken by the Assignee or the validity or the amount of the Liabilities or the existence of any default therein." Attached hereto as Exhibit W is the referenced correspondence.

45. By email dated March 6, 2024, counsel for Equitable provided the Zotos' lawyer with a claim form. As of the date of this filing, Equitable has not received an executed claim form from the Zotos.

46. Upon information and belief, in addition to the Zotos and irrespective of the Zoto Assignment, Defendants Alysha, Tammy, and Christina still maintain their claims to the Death Benefits.

47. Equitable has not denied a claim for benefits under the Policy nor does it intend to. As explained herein, Equitable is ready, willing, and able to pay the Death Benefits.

48. In light of the foregoing competing claims to the Death Benefits, Equitable cannot determine without peril the proper party to whom the proceeds are owed and payable. As a result, Equitable has been compelled to retain counsel and file this Amended Interpleader Complaint.

## INTERPLEADER TO DEPOSIT INSURANCE POLICY DEATH BENEFITS INTO THE REGISTRY OF THE COURT

49. Equitable incorporates by reference each preceding paragraph as if fully set forth herein.

50. Equitable admits that the Death Benefits, plus accrued interest, if any, are payable. Due to the issues described above, however, Equitable cannot determine without peril the proper beneficiary to whom the Death Benefits are owed.

51. Equitable has in no way colluded with any of the parties named herein concerning the matters of this case. Equitable has not been, nor will it be, indemnified in any manner by any of the parties. Equitable has filed this Interpleader of its own free will to avoid multiple liability and unnecessary suits and costs.

52. Equitable has no means other than this Interpleader action of protecting itself against multiple conflicting or potentially conflicting claims and/or possible multiple litigation on the part of Interpleader Defendants as to the Death Benefits.

53. As a mere stakeholder, Equitable makes no claim to the Death Benefits other than payments of its reasonable attorneys' fees, costs and disbursements in connection with this action. Equitable therefore respectfully requests that this Court determine to whom the Death Benefits should be paid.

54. Equitable is ready, willing, and able to pay the Death Benefits and hereby offers to deposit the Benefits, together with accrued claim interest, if any, into the Registry of the Court upon issuance of an order authorizing the deposit of said interpleader funds.

55. Equitable should be discharged as a disinterested stakeholder and should recover its reasonable attorneys' fees and costs for the services rendered in prosecuting this interpleader action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Equitable respectfully requests that this Court grant the following relief:

(a) That the Interpleader Defendants be ordered to interplead and settle among themselves their respective rights to the Death Benefits;

(b) That Equitable be permitted to pay the Death Benefits, together with accrued interest, if any, into the registry of the Court;

(c) That the Court enter an order permanently enjoining each of the Interpleader Defendants, their agents, attorneys, and/or assigns, and any other purported beneficiaries of the Policy, from instituting or maintaining any action in any court or forum against Equitable or its parent company, Equitable Holdings, Inc., for the recovery of any claim, in whole or in part, against the Policy;

(d) That an award be made to Equitable out of the funds to be deposited into the registry of the Court, as reimbursement for the costs, attorneys' fees, and other expenses that Equitable is compelled to expend in the prosecution of this interpleader lawsuit;

(e) That Equitable be dismissed with prejudice from this action and discharged from any and all further liability with respect to, affecting, or in any way arising out of the Policy with an express finding of finality pursuant to Fed. R. Civ. P. 54(b); and

(f)        That the Court award such other and further relief to which Equitable is entitled in law or equity, as the Court may deem just and proper.

March 15, 2024                        NELSON MULLINS RILEY & SCARBOROUGH LLP

                                              */s/ Lisa A. Herbert*
                                              Lisa A. Herbert
                                              330 Madison Avenue, 27th Floor
                                              New York, New York 10017
                                              Telephone: (212) 413-9000
                                              Email: lisa.herbert@nelsonmullins.com

                                              *Attorney for Plaintiff Equitable Financial Life Insurance Company*